Sebranke, Respondent, vs. Kohlmeyer, Appellant.

*December 6, 1906—January 8, 1907.*

*Waters and watercourses: Mill ponds: Obstructions: Evidence: Injunction.*

In an action to compel the removal of an obstruction placed in a mill pond, the complaint alleged facts sufficient, if true, to entitle plaintiff to an injunction perpetually forbidding defendant from erecting or maintaining, within the flowage created by the dam, obstructions of any kind or description, and the evidence, stated in the opinion, is *held* sufficient to sustain findings in favor of plaintiff.

Appeal from a judgment of the circuit court for Sauk county: E. Ray Stevens, Circuit Judge. *Affirmed.*

This action was commenced February 9, 1905, to compel the defendant to remove from the plaintiff's mill pond the structure and sewer described in the complaint, and to perpetually enjoin the defendant from erecting or maintaining within the limits of the flowage created by the dam any obstruction of any kind or description, and for damages and costs. The complaint alleged facts sufficient, if true, to entitle the plaintiff to such injunction. February 28, 1905, the defendant answered by way of admissions, denials, and counter allegations. The case came on for trial April 24, 1905, and, after the close of the trial, the court made findings of fact wherein it is found, in effect, that the plaintiff was the owner in fee of the premises described in the complaint and of the milldam, water power, and rights of flowage appurtenant thereto; that such dam had been established and maintained on said premises at the same height and to the same extent as at the commencement of the action for more than thirty years immediately prior thereto, without interruption and under claim of right by the plaintiff and his grantors, and they had thereby acquired and owned at the time of the commencement of this action the right to flow over all lands covered by the mill pond created by said dam; that the defendant owned and occupied lands adjoining said pond upon the south; that opposite said lands of the defendant and extending northerly into said pond and nearly at right angles to the stream, without permission or authority from the plaintiff, entirely within the limits of such flowage belonging to the plaintiff, the defendant built a board and post structure described as follows: 2x4-inch posts driven eighteen to twenty-four inches into the bottom of the pond and about two feet apart, extending in two lines about eight feet apart, forty feet within the limits of said flowage right of the plaintiff, and a like row of posts across the north end of such structure; that upon these posts the defendant securely nailed boards eight to ten inches wide, placed closely

together, extending nearly to the bottom of the pond and
above the surface of the pond sixteen or eighteen inches, and
within the inclosure formed by the structure the defendant
placed sawdust and other refuse; that the said milldam con-
sisted of the flume and gates leading to the plaintiff's mill,
and waste gate fourteen feet wide, and west of that an over-
flow dam constructed of piling bolted together, plank apron
extending under the pond to the south end of earth and rock;
that the whole of said overflow dam was ninety to one hundred
feet in length, and west of said overflow dam was an earthen
dike, constituting a part of the dam, from forty to fifty rods
in length; that said earthen dam extended both to the west
and east of said land of the defendant, which was situated
upon the opposite or south bank of the stream and pond; that
the said dam and waste gate were upon the north side of the
stream and pond; that the entire width of the stream at the
point where said structure was built was 130 feet, and the
depth of the water at the ordinary stage not to exceed four
feet at the deepest place; that the portion of the dam so con-
structed of earth was easily washed away by water flowing
over it or by currents of water in the pond flowing against it;
that the stream was subject to sudden rises of water and
floods; that during such periods the water from the whole
pond flowed toward the dam; that at such times there was
a decided current over the place where the defendant built
said structure; that at such times it was often necessary, in
order to save the dam from overflow, to open the waste gates
and permit the water to escape; that there was danger that
such structure might be carried by the current down the pond
and stop the passage of water through the waste gate and
result in the destruction of the dam; that there was also dan-
ger, in case such structure should be washed away, of debris
being carried into the flume and damaging the gates and
wheel; that such structure was an obstruction to the flow of
water in said pond in times of freshet; that it endangered

the dam, and that any such structure was an invasion of the plaintiff's rights of flowage and increased the danger of overflow in times of freshet and, consequently, injury and loss to the plaintiff; that the said dam and water power thereby created and appurtenant thereto was a valuable right and was found to be worth from $400 to $600 per year, and that the danger of injury to the plaintiff resulting from such structure recurred with each succeeding freshet. As conclusions of law the court found, in effect, that the plaintiff had no adequate remedy at law for the injuries mentioned; that the defendant should be ordered and required to remove said structure completely and entirely from said pond; that the defendant and all persons claiming under him be restrained and enjoined from erecting or maintaining any similar structure within the limits of said mill pond; that the plaintiff was entitled to taxable costs and disbursements in this action against the defendant; and ordered judgment to be entered accordingly. From the judgment so entered the defendant appeals.

G. Stevens, for the appellant.

James A. Slone, for the respondent.

CASSODAY, C. J. The defendant contends that the findings of the court are not sustained by competent testimony. To appreciate the evidence the situation as admitted should be kept in mind. The stream, at the place in question, runs in an easterly direction. The defendant's land, described, abuts upon the south shore of the pond, and the structure complained of extends from that shore north into the pond. The flume and gates leading to the plaintiff's mill, and the waste gate—together constituting the milldam proper, and mentioned in the foregoing statement—appear to have been situated about forty rods east of the defendant's structure in question. Immediately west of such waste gate and along and upon the north shore of the pond was an overflow dam,

constructed as described, from ninety to one hundred feet in length. Immediately west of such overflow dam and along and upon the north shore of the pond was an earthen dike, constituting a part of the dam, forty to fifty rods in length and extending further west than the defendant's structure in question. At the point where such structure was located the pond was only 130 feet wide and the water at an ordinary stage at no place more than four feet in depth. Such structure extended north nearly at right angles to the shore and the pond forty feet, and was eight feet wide and closely inclosed with boards nailed thereto and extending nearly to the bottom of the pond and from sixteen to eighteen inches above the surface of the pond. Such structure constituted a complete breakwater for nearly one third of the distance across the pond. Some distance west of such structure the course of the stream was from the southwest to the northeast into the head of the pond, and the water therein naturally moved toward the north shore of the pond and the dike mentioned, and so necessarily passed between the north end of such structure and the dike. At the time of the commencement of this action the plaintiff was the owner in fee of the mill, milldam, overflow dam, dike, water power, and all rights of flowage appurtenant thereto, and the same had been established and maintained upon said premises at the same height and to the same extent, without interruption, under claim of right by the plaintiff and his grantors, for more than thirty years. The complaint alleged, in effect, that said dike was easily damaged by extreme floods or any diversion of the current of the stream at times of high water, and that during the two years immediately preceding the commencement of this action, such dike, at a point nearly opposite the defendant's structure, had been washed out four times, so as to destroy its entire purpose as a dam. The answer admitted that the plaintiff's dam had been washed out and carried away by high water many times and was liable to be washed out and

·carried away many more times in the future without fault of the defendant. The evidence covers nearly one hundred printed pages, of which sixty-nine pages are on the part of the plaintiff. The only objection to the ruling upon evidence urged is that one out of twelve of the plaintiff's witnesses, who had seen the water power in question but had never paid any particular attention to the pond or dam, was allowed to answer hypothetical questions in respect to the same as an ·expert. But it is enough here to say that the other evidence in the case, to which no objection was taken, is, in our judgment, sufficient ·to sustain the findings of the trial court. Certainly we cannot hold that such findings are against the ·clear preponderance of the evidence.

*By the Court.*—The judgment of the circuit court is affirmed.